IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 1:21MJ276 |
| ) | |
| LILIAN MANTSEVA BARKOVSKAJA ) | |
| a/k/a/ Lilian Raymond Odierno ) | |

## ORDER

On July 29, 2021, a Criminal Complaint was filed against Lilian Mantseva Barkovskaja ("Defendant") charging her with fraud and misuse of visas in violation of 18 U.S.C. § 1546(a). Defendant was arrested on the Complaint and the case came before the Court for a preliminary hearing and a hearing on an oral motion for detention by the United States, pursuant to 18 U.S.C. § 3142(f). At the end of the hearing, the Court found probable cause to support the charges and orally ordered Defendant's detention pending disposition of this case because clear and convincing evidence established that no combination of release conditions would reasonably assure the safety of others and the community and because a preponderance of the evidence established that no condition or combination of conditions would reasonably assure Defendant's appearance. The Court now enters this written order memorializing that ruling as required by 18 U.S.C. § 3142(i)(1). As discussed during the hearing, public health restrictions prevented Defendant's attorney and the Probation Office from speaking with Defendant about any potential release plan before the day of the hearing. In the circumstances, and with agreement of counsel for Defendant and counsel for the Government, the Court proceeded with the hearing and made findings based on the evidence

presented, but with leave for Defendant to move to reopen the question of pretrial detention if she later has evidence or information to present.

I.  BACKGROUND

Before the hearing, a United States Probation Officer attempted to interview Defendant in order to prepare a Pretrial Services Report, but was prevented from doing so in a timely manner due to public health protocols at the facility where Defendant is housed. Therefore, the Probation Officer prepared an abbreviated Pretrial Services Report based on Defendant's financial affidavit and computerized records, regarding Defendant's history, residence, family ties, employment history, financial resources, health (including as it relates to mental health and substance abuse issues), and prior record. Both parties had an opportunity to review that report before the hearing. Defendant noted no objections or corrections at this time, but requested the opportunity to object to or supplement the report should more information become available. The Court noted Defendant's continued right to object or supplement, and adopted the Report as its own findings of fact.

In addition, at the hearing, Defendant was "afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear[ed] at the hearing, and to present information by proffer or otherwise." 18 U.S.C. § 3142(f). The United States called (and, through counsel, Defendant cross-examined) Diplomatic Security Service Special Agent Viki McCorkel, who is familiar with the investigation into Defendant. Counsel for Defendant reserved the right to present evidence by testimony or proffer at a later date, should Defendant move for reconsideration of this Order.

At the hearing, Agent McCorkel testified that on July 22, 2021, Defendant reached out to the Pinehurst Police Department seeking information on how to contact her "husband," General Ray Odierno. Agent McCorkel testified that Defendant presented documents including her visa, her passport, and what were determined to be a fraudulent passport and naturalization certificate for General Odierno. Agent McCorkel testified that the Pinehurst Police Department took pictures of the documents presented by Defendant, and that the Department shared those photographs with the Joint Terrorism Task Force. Agent McCorkel testified that the Joint Terrorism Task Force passed the information on to agents with Homeland Security Investigations ("HSI"). Agent McCorkel testified that around July 23, 2021, a Special Agent with HSI contacted her agency regarding the immigrant visa that had been issued to Defendant. Agent McCorkel testified that HSI and the Department of State were concerned that Defendant's visa application was "riddled with fraudulent documents." Agent McCorkel testified that at that time, officers began working to piece together the timeline of when and how Defendant's visa was issued.

Agent McCorkel testified that Defendant was born and raised in Russia, and had been naturalized in Spain, when she applied for, and received, an IR1 visa as the spouse of an American. Specifically, Agent McCorkel testified that Defendant claimed to be the spouse of General Odierno. Agent McCorkel testified that to receive such a visa, Defendant would have been required to submit a range of paperwork on behalf of her American spouse. Agent McCorkel testified that Defendant submitted her initial visa paperwork to the United States Embassy in Madrid, including a purported marriage certificate showing that she and General Odierno were married in Cote d'Ivoire in 2014, and a purported death certificate for General

Odierno's original spouse. The consular official processing her application requested photographs of Defendant with General Odierno as further proof of their relationship. Agent McCorkel testified that several days later, Defendant emailed photographs to the consular official, and the visa was issued. Agent McCorkel testified that at that point, Defendant was free to enter the country and become a legal permanent resident of the United States.

Agent McCorkel testified that following the issuance of a visa, Defendant traveled from Spain to Russia, and ultimately left Russia for Los Angeles on May 30, 2021. Agent McCorkel testified that Defendant then traveled to North Carolina, left to go to Orlando for approximately two weeks, and returned to North Carolina. Agent McCorkel testified that around June 17, 2021, and again on July 4, 2021, Defendant attempted to go to General Odierno's home in North Carolina. Agent McCorkel testified that on one of these occasions Defendant was discovered at General Odierno's front door along with several suitcases, and on the second occasion, she was discovered attempting to gain entry to the gated community where he lives. Agent McCorkel further testified that following Defendant's contact with the Pinehurst Police Department, and shortly before her arrest on the present charges, Defendant was discovered outside General Odierno's home looking in windows.

Agent McCorkel testified that as part of their investigation, agents have begun the process of verifying the authenticity of the documents Defendant submitted as part of her visa application. Agent McCorkel testified that her office is still waiting on confirmation from the American embassy in Cote d'Ivoire regarding the authenticity of the marriage certificate, but that investigators are confident that General Odierno has never traveled to Cote d'Ivoire. As to the purported death certificate for General Odierno's spouse, Agent McCorkel testified that

officers have confirmed that General Odierno's wife is alive and still married to General Odierno. As to the purported naturalization certificate for General Odierno, Agent McCorkel testified that General Odierno was born in the United States, and that the number on the certificate presented by Defendant matches the 1979 naturalization certificate of an immigrant from Mexico. Finally as to the photographs submitted by Defendant as further proof of her relationship with General Odierno, Agent McCorkel described them as "not even remotely" authentic, and testified that it appeared as if photographs of Defendant's head were simply copied into photographs that happened to include General Odierno. Agent McCorkel further testified that as part of their investigation, officers obtained and executed a search warrant on the hotel room in which Defendant was staying, where they recovered credit cards in three different names. Agent McCorkel testified that Defendant was ultimately arrested in her hotel room.

II. DISCUSSION

Based on the information presented at the hearing described above, the Court found probable cause to believe that the charged offenses have been committed by Defendant as alleged in the Complaint, in violation of 18 U.S.C. § 1546(a).

In resolving the issue of release or detention, along with the statutory presumption, the Court considers the following statutorily-prescribed factors:

(1) the nature and circumstances of the offense charged . . .;

(2) the weight of the evidence against the [defendant];

(3) the history and characteristics of the [defendant] . . .; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release.

18 U.S.C. § 3142(g).

In the present case, with respect to the nature of the offense charged against Defendant, the offenses charged are serious, involving the use of fraudulent documents to obtain a visa and travel to the United States. With respect to the weight of the evidence, the weight of the evidence is strong based on the testimony at the hearing concerning the present alleged offenses. As discussed above, the evidence reflects that on May 30, 2021, Defendant entered the United States on a visa that was procured using a fraudulent passport for General Odierno, a fraudulent death certificate for General Odierno's spouse, and multiple other fraudulent documents and photographs. Defendant obtained her visa by claiming to be the spouse of General Odierno and claiming that the couple was married in Cote d'Ivoire, but investigators determined that she was not married to General Odierno, that the two have never met, and that General Odierno has never been to Cote d'Ivoire.

Regarding the history and characteristics of Defendant, Defendant was born in Russia and owns a home in Spain, but does not have ties to the United States, and used fraudulent documents to enter the United States, which raises significant concerns as to the risk of flight. Furthermore, the Court has concerns with respect to the risk of danger in light of the evidence of Defendant's repeated harassment of General Odierno and his family, including at least three attempts to go to General Odierno's home and the fabrication of a death certificate for his wife. At this point, Defendant has been unable to present a suitable release plan to address those concerns.

Therefore, in light of the factors and concerns set out above, the Court finds by clear and convincing evidence that no presently available condition or combination of release conditions would reasonably assure the safety of others and the community, and by a preponderance of the evidence that no condition or combination of conditions would reasonably assure Defendant's appearance.

IT IS THEREFORE ORDERED that the Motion for Detention by the United States is GRANTED and Defendant shall be detained pending disposition of the instant charges pursuant to 18 U.S.C. § 3142(e)(1). Defendant is committed to the custody of the Attorney General of the United States or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

This, the 12th day of August, 2021.

                                              /s/ Joi Elizabeth Peake
                                              United States Magistrate Judge